# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

FILED
U.S. DIST. COURT
BRUNSWICK DIV.

2005 SEP 2b A 9: 09

CLERK

JOEL E. PRICE and RUSSELL E.   :    CIVIL ACTION
PRICE, individually and on
behalf of all similarly    :
situated individuals,

           :

   Plaintiffs,

           :

     v.

           :

COUNTRYWIDE HOME
LOANS, INC.,         :

   Defendant.       :    NO. CV205-015


## O R D E R

   Plaintiffs, Joel E. Price and Russell E. Price, brought
the above-captioned case against Defendant, Countrywide Home
Loans, Inc., alleging violations of the Real Estate Settlement
Procedures Act of 1974 ("RESPA"), codified at 12 U.S.C. §§
2601-2617.

   Presently before the Court is Countrywide's motion to
dismiss for failure to state a claim upon which relief can be
granted and for improper venue. Finding that Joel Price's
claim is legally sufficient, but that venue is improper for

Russell Price's claim, the Court determines that Countrywide's motion will be **GRANTED** in part, and **DENIED** in part.

## BACKGROUND

Countrywide is a residential mortgage loan broker, and Landsafe, Inc., is a credit reporting company. Both entities are wholly-owned subsidiaries of Countrywide Financial Corporation.[1] Landsafe offers its credit reporting services to Countrywide and other unrelated lenders.

According to Plaintiffs, Landsafe produces credit reports electronically and, upon request, can submit reports to mortgage lenders nearly instantaneously via computer network lines, or modems. The Prices aver that all the lender's representative must do is open Landsafe's software on a computer, identify the borrower, and press a button to request a report.

Countrywide obtains credit reports at the beginning of the loan application process to determine loan applicants' credit worthiness and their risk for default. However, the company charges borrowers for credit reports only if the consumer's

---

[1] Because the parent company is not otherwise involved in this action, the Court will use the name "Countrywide" to refer to Defendant, Countrywide Home Loans, Inc.

AO 72A
(Rev. 8/82)

loan closes. If for any reason the customer does not enter into a mortgage loan agreement with the company, Countrywide does not charge the customer.

In 2002, Countrywide settled a class action lawsuit related to alleged overcharges for credit reports.[2] Plaintiffs assert that before the settlement, Countrywide charged borrowers eighteen dollars for a credit report, but thereafter, raised the fee to thirty-five dollars. Countrywide obtained credit reports from Landsafe before and after the settlement. The Prices contend that Countrywide was motivated to change its pricing structure by the class action settlement.

Plaintiffs maintain that for the type of credit report obtained by Countrywide, Landsafe continues to charge other unrelated lenders about eighteen dollars per report. The Prices aver that Countrywide retains seventeen of the thirty-five dollars paid by closing homeowners, and pays eighteen dollars to Landsafe per report. According to Plaintiffs, Countrywide uses the seventeen dollars to recoup its losses on the reports it obtains on loans that fail to close (for which it still pays Landsafe eighteen dollars per report).

---

[2] Gonzales v. Countrywide Home Loans, Inc., Nos. B163706, B166302, 2004 WL 1904280, at *1-*3 (Cal. Ct. App. Aug. 26, 2004).

3

AO 72A
(Rev. 8/82)

Joel Price financed a home purchase in Kingsland, Georgia, with a mortgage loan from Countrywide. His loan closed on September 25, 2003, and his HUD-1 settlement statement indicated that Countrywide charged him thirty-five dollars for a credit report that it performed. Joel Price's brother, Russell Price, also financed a home purchase through Countrywide, and closed his loan on May 28, 2004. Russell Price's HUD-1 settlement statement shows similarly that Countrywide generated the credit report related to his home purchase in Birmingham, Alabama.

The Prices filed this putative class action complaint on the theory that, because Countrywide provided "no or nominal services" in rendering the credit reports, the company's "mark-up" of Landsafe's service charge violates § 8(b) of RESPA.

## MOTION TO DISMISS STANDARD UNDER RULE 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a complaint on the ground that the plaintiff has failed to state a claim upon which relief can be granted. A motion under Rule 12(b)(6) attacks the legal sufficiency of the complaint. In essence,

the movant says, "Even if everything you allege is true, the law affords you no relief."

Consequently, in determining the merits of a Rule 12(b)(6) motion, a court must assume that all of the factual allegations of the complaint are true, *e.g.*, United States v. Gaubert, 111 S. Ct. 1267, 1276 (1991), and construe the allegations in the light most favorable to the plaintiff, *e.g.*, Sofarelli v. Pinellas County, 931 F.2d 718, 721 (11th Cir. 1991). "A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the [complainant] can prove no set of facts in support of his claim which would entitle him to relief." United States v. Baxter Int'l, Inc., 345 F.3d 866, 880 (11th Cir. 2003).

In its motion to dismiss, Countrywide posits that Joel Price's claim is untimely under RESPA's one-year statute of limitations, and that Russell Price filed his suit in the wrong district court. In the alternative, Countrywide contends that it is entitled to dismissal on the merits because it provided

AO 72A
(Rev. 8/82)

a compensable service[3] in arranging for Landsafe to render the credit reports.

## DISCUSSION

Congress enacted RESPA to provide more complete disclosure of settlement costs to home buyers, and to eliminate "referral fees that tend to increase unnecessarily the costs of certain settlement services[.]" 12 U.S.C.A. § 2601(b) (2001). Section 2607(b) was aimed at furthering the Congressional goal of forbidding the collection of unearned fees.

The statute provides:

(b)  Splitting charges

No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C.A. § 2607 (2001).

Under RESPA, a "settlement service" includes the "rendering of credit reports[.]" 12 U.S.C.A. § 2602(3) (2001). Administrative regulations enacted by the United States

---

3   Where no or nominal services are provided, no fee may be charged under RESPA.   24 C.F.R. § 3500.14(c) (2005).   For ease of reference, the Court uses the phrase "compensable service" to refer to those services that constitute more than a "nominal service."

AO 72A
(Rev. 8/82)

Department of Housing and Urban Development ("HUD") provide that "[a] charge by a person for which no or nominal services are performed or for which duplicative fees are charged is an unearned fee and violates [§ 2607]." 24 C.F.R. § 3500.14(c) (2005).

## I. RESPA's Statute of Limitations May be Tolled for Joel Price's Claim

For causes of action under § 2607, RESPA imposes a one year statute of limitations. 12 U.S.C.A. § 2614 (2001). Joel Price filed his complaint on January 21, 2005, more than a year after his closing, the date on which the alleged violation occurred. Although Countrywide has raised the statute of limitations as a defense, Price contends that he is entitled to avoid the limitations defense under the doctrine of equitable tolling.

The U. S. Supreme Court has explained the interplay of two key principles of equitable tolling, fraudulent concealment and due diligence, as follows:

> If want of due diligence by the plaintiff may make it unfair to pursue the defendant, fraudulent conduct on the part of the defendant may have prevented the plaintiff from being diligent and may make it unfair to bar appeal to equity because of a mere lapse of time. . . . And so this Court long ago adopted as its own the old chancery rule that where a plaintiff

AO 72A
(Rev. 8/82)

has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.' . . . This equitable doctrine is read into every federal statute of limitation.

Holmberg v. Armbrecht, 327 U.S. 392, 396-97 (1945)(citation omitted).

To toll the statute of limitations, the plaintiff must demonstrate that "the defendant[] concealed the conduct complained of, and that [the plaintiff] failed, despite the exercise of diligence on [his] part, to discover the facts that form the basis of [his] claim." Morton's Market, Inc. v. Gustafson's Dairy, Inc., 198 F.3d 823, 832 (11th Cir. 1999)(quoting In re Beef Indus. Antitrust Litig., 600 F.2d 1148, 1169 (5th Cir. 1979)),[4] amended on other grounds, 211 F.3d 1224 (11th Cir. 2000).

Yet, on a motion to dismiss, the moving party bears the burden of demonstrating that the complaint is legally deficient. Thus, to prevail on its motion, Countrywide must

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

AO 72A
(Rev. 8/82)

show that Price had notice of his claim "or had notice sufficient to prompt [him] to investigate and that, had [he] done so diligently, [he] would have discovered the basis for [his] claims." Morton's Market, Inc., 198 F.3d at 832.

All doubt is resolved in favor of the non-moving party, and "[t]his standard is applied with particular stringency where it is claimed that the defendant's conduct prevented the plaintiff from discovering his claim prior to the expiration of the limitations period." Id. In most instances, the "issue of when a plaintiff is on 'notice' of his claim is a question of fact[,]" and, generally, whether a plaintiff exercised due diligence is also a question properly reserved for jury determination. Id. "It is not enough . . . to point to facts which might have caused a plaintiff to inquire, or could have led to evidence supporting his claim." Id. at 832-33.

In the instant case, there is no indication that Joel Price knew of any reports that Countrywide was violating the law by charging unearned fees in connection with credit reports. Id. at 833. There is no evidence that Price was on actual notice of his claim.

To the contrary, Price has satisfied the strictures of Rule 9(b) by pleading with particularity the specific facts

AO 72A
(Rev. 8/82)

constituting fraudulent concealment. Price avers that the HUD-1 statement actively misled him by not disclosing Landsafe's identity, and its share of the credit reporting fee. Instead, the HUD-1 form stated that Countrywide provided the credit report, and that the company would receive all fees associated with the report.

While Countrywide admits that the HUD-1 form was inaccurate, the company asserts that it did not fraudulently conceal any information because, prior to closing, it gave Price two documents that disclosed that another entity would be providing the credit reports: an Affiliated Business Arrangement Disclosure Statement and a Good Faith Estimate.

However, the Court may consider these documents as part of the pleadings only if they were referenced in the complaint, and are central to Plaintiffs' claims. Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997). Neither document was mentioned in Plaintiffs' complaint, and the documents only become relevant when considering the applicability of Defendants' statute of limitations defense. Consequently, the Court will not consider the documents at this stage of the proceedings. Rather, Countrywide may submit the documents in support of a motion for

AO 72A
(Rev. 8/82)

summary judgment if it wants to assert that equitable tolling is unavailable based on the documents.

Countrywide maintains that even if there was fraudulent concealment and Price was not on notice, equitable tolling cannot apply because Price has failed to plead specifically that he exercised any diligence whatsoever. Yet, the Eleventh Circuit has rejected such a requirement in favor of the approach taken by "the overwhelming weight of authority, [which] treats 'inquiry notice' as an objective standard." Under this approach, the plaintiff is not on notice "until he should have discovered the basis for his claims." Morton's Market, Inc., 198 F.3d at 835. "The actual exercise of diligence is irrelevant because . . . 'it must be determined whether a reasonably diligent plaintiff would have discovered the fraud.'" Id. at 836 (quoting Sterlin v. Biomune Sys., 154 F.3d 1191, 1202 n.20 (10th Cir. 1998)).[5]

In sum, under Plaintiffs' theory of the case, the wrong was Countrywide's mark-up of Landsafe's fee. The misrepresentation that prevented Joel Price's inquiry was

---

[5]    While, traditionally, courts of equity required actual diligence, the modern federal standard looks at the matter using an objective standard. See Ohio v. Peterson, Lowry, Rall, Barber & Ross, 651 F.2d 687, 692-95 n.16 (10th Cir. 1981).

AO 72A
(Rev. 8/82)

Countrywide's decision to list itself as the provider of the credit report and recipient of all fees associated therewith, instead of showing that it was retaining seventeen dollars, and paying the rest to Landsafe.

Price argues that had it not been for Countrywide's trickery in hiding the way it split the credit reporting fee, he could have discovered the mark-up, and confronted Countrywide at closing about the discrepancy.[6] This contrivance may have prevented a reasonably prudent borrower from exercising ordinary diligence, such that it would be

---

[6] In support of his contention, Price cites an "Advisory Letter," which he contends was released by the Comptroller of the Currency on May 31, 2000. In the letter, HUD's Office of General Counsel provided regulatory guidance through a series of questions and answers. The seventeenth exchange went as follows:

A bank charges a fee for document preparation. A portion of the fee goes to the bank and a portion goes to the attorney. Should this fee be split and placed on two separate HUD-1 line numbers?

Answer: The regulations specify that "[f]or all items except those paid to and retained by the Lender, the name of the person or firm ultimately receiving the payment should be shown." [24 C.F.R. Pt. 3500, App. A, Section L.] The correct method of disclosing this item would therefore be to separate that part of the fee that the bank pays the attorney and to list it on line 1105 or 1107. The remaining portion of the fee, which relates to document preparation work actually performed by the lender, should be separately identified in one of the blank lines of the 800 series. It is important to note that Section 8 of RESPA prohibits anyone from collecting any fee or portion thereof, unless it is for goods delivered or services actually rendered. (12 U.S.C. § 2607 (a)-(c)).

AO 72A
(Rev. 8/82)

inequitable to apply the statute of limitations to Price's claim.

At this stage of the proceedings, the Court concludes that Joel Price's claim is not time barred as a matter of law.

## II. **Russell Price May Not Assert Pendent Venue under RESPA**

Venue is proper under RESPA "in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred." 12 U.S.C.A. § 2614 (2001).

Russell Price's property is located in Alabama, and he has not alleged that he can satisfy RESPA's venue provision based on his own claim. Nonetheless, Price maintains that venue is proper for his claim because a substantial part of the events occurred in the Southern District of Georgia, or because a substantial part of the property involved in the case is located in this district. In short, Russell Price contends that the Court has "pendent venue" over his claim because his brother's claim arises in this district. In making this

13

argument, Price analogizes the general venue provision,[7] which, it must be noted, does not apply where venue is "otherwise provided by law."   28 U.S.C. § 1391(b)(2).

In support of his argument, Price urges the Court to extend Exxon Corp. v. Federal Trade Commission, 588 F.2d 895 (3d Cir. 1978), to the facts of this case.   In Exxon, the court considered the venue provision codified at 28 U.S.C. § 1391(e), which provides that a civil action against a federal agency or employee may be brought in any judicial district in which "the plaintiff" resides.   The Exxon suit involved several plaintiffs, and although some were situated in different judicial districts, the court allowed all the claims to proceed together in one district under a theory of pendent venue.   The Exxon court reasoned that requiring every plaintiff to meet the venue requirements independently would lead to a multiplicity of actions and judicial inefficiency.   Id. at 898.

Some courts have refused to read other specific venue provisions so broadly, and have distinguished Exxon on the ground that it involved a particularly expansive venue

---

[7]   The general venue provision states, in pertinent part, that a suit may be maintained in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is subject of the action is situated."   28 U.S.C. § 1391(b)(2).

provision, or because it involved the federal government as a defendant. <u>E.g.</u>, <u>Davila v. Weinberger</u>, 600 F. Supp. 599, 601-05 (D.D.C. 1985); <u>Dukes v. Wal-Mart Stores, Inc.</u>, No. Civ. A. 01-2252, 2001 WL 1902806, at *6 (N.D. Cal. Dec. 3, 2001).

Moreover, the Supreme Court's pronouncements on the topic do not provide support Price's policy-based arguments. Writing for the Court, Justice Frankfurter intoned that "[t]he requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction." <u>Olberding v. Ill. Cent. R.R.</u>, 346 U.S. 338, 340 (1953).

> In most instances, the purpose of statutorily specified venue is to protect the <u>defendant</u> against the risk that a plaintiff will select an unfair or inconvenient place of trial. . . . The desirability of consolidating similar claims in a single proceeding may lead defendants . . . to waive valid objections to otherwise improper venue. But that concern does not justify reading the statute to give the plaintiff the right to select the place of trial that best suits his convenience. So long as the plain language of the statute does not open the severe type of "venue gap" that the amendment giving plaintiffs the right to proceed in the district where the claim arose was designed to close, there is no reason to read it more broadly on behalf of plaintiffs.

<u>Leroy v. Great Western United Corp.</u>, 443 U.S. 173, 183-84 (1979)(footnote omitted); <u>see</u> <u>generally</u>, Richard Corn, <u>Pendent</u>

*Venue: A Doctrine in Search of a Theory*, 68 U. Chi. L. Rev. 931 (2001).

These precedents make plain that Price's policy justifications cannot override the clear intent of Congress in drafting the specific RESPA venue provision. What Congress meant to do in such circumstances is obvious: limit the districts where claims arising under the pertinent laws could be brought. The Court's function is to interpret laws, not improve upon them.

The Court finds that *Exxon*'s rationale should not be extended or applied to RESPA's venue provision because making broad exceptions for judicial economy, and avoiding a multiplicity of litigation, would thwart the will of Congress in crafting RESPA's specific venue provision. Russell Price shall be dismissed from the action as a named plaintiff.[8]

### III.    If Price's Allegations are True, Countrywide May Have Violated RESPA

Section 8(b) of RESPA provides that:

---

[8]

While absent class members need not satisfy venue requirements, named plaintiffs representing the class must. *Abrams Shell v. Shell Oil Co.*, 343 F.3d 482, 489-90 (5th Cir. 2003); *Quarles v. Gen. Inv. & Dev. Co.*, 260 F. Supp. 2d 1, 8-13 (D.D.C. 2003); Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 6.3 (4th ed. 2002); James W. Moore, 17 Moore's Federal Prac. § 110.07 (3d ed. 2005).

AO 72A
(Rev. 8/82)

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C.A. § 2607(b) (2001).

Countrywide contends that, accepting the averments in the complaint as true, it performed a compensable service by arranging to have Landsafe provide the credit reports. Countrywide points out that it had to contact Landsafe, identify the prospective borrowers, request the reports, and then receive and review the documents.

Price maintains that if obtaining a settlement service from a third party were sufficient involvement to earn a fee under RESPA, § 8(b) would be rendered meaningless. According to Price's allegations, all of the credit reporting activity is done using a computer hookup. After Countrywide identifies the borrower and submits the request, no further work is required by Countrywide to complete the credit report.

In that vein, the Court can dispose of part of Countrywide's arguments regarding its purported services as a matter of law. Countrywide asserts that it performed a compensable service, in part, by "receiving and reviewing" the credit reports. However, the rendering of a credit report was

complete upon its delivery to Countrywide. Neither receiving nor reviewing credit reports constitutes a compensable service under RESPA. <u>See</u> HUD Statement of Policy 2001-1, 66 Fed. Reg. 53,052, 53,059 n.7 (2001).

HUD's statement of policy is entitled to deference. <u>Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837 (1984). The Court reaches this conclusion by first recognizing that § 8(b) does not compel a result one way or the other. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." <u>Id</u>. at 842-43.

When the statutory directive is ambiguous, <u>Chevron</u> deference is appropriate where Congress has provided an express delegation of authority to the agency "to make rules carrying the force of law, and the agency interpretation claiming deference was promulgated in the exercise of that authority." <u>United States v. Mead Corp.</u>, 533 U.S. 218, 226-27 (2001).

In enacting RESPA, Congress granted HUD such authority. "The Secretary is authorized to prescribe such rules and regulations, to make such interpretations, and to grant such reasonable exemptions for classes of transactions, as may be

18

necessary to achieve the purposes of this chapter." 12 U.S.C.A. § 2617(a) (2001). Moreover, HUD has indicated that statements of policy appearing in the Federal Register are interpretations that are promulgated in exercise of its authority under the statute. 24 C.F.R. § 3500.4(a)(1)(ii) (2005).

And although some courts have doubted the matter,[9] a statement of policy can be entitled to <u>Chevron</u> deference even without the notice and comment procedures that accompany formal agency rule-making. <u>Barnhart v. Walton</u> should have disabused courts of the notion that formal rule-making is a <u>sine qua non</u> of <u>Chevron</u> deference:

> [T]he fact that the Agency previously reached its interpretation through means less formal than "notice and comment" rulemaking . . . does not automatically deprive that interpretation of the judicial deference otherwise its due. . . . If this Court's opinion in <u>Christensen v. Harris County</u>, 529 U.S. 576 (2000), suggested an absolute rule to the contrary, our later opinion in <u>United States v. Mead Corp.</u>, 533 U.S. 218 (2001), denied the suggestion. . . . Indeed, <u>Mead</u> pointed to instances in which the Court has applied <u>Chevron</u> deference to agency interpretations that did not emerge out of notice-and-comment rulemaking. . . . It indicated that whether a court should give such deference depends in significant part upon the interpretive method used and the nature of the

---

[9]  <u>E.g.</u>, <u>Krzalic v. Republic Title Co.</u>, 314 F.3d 875, 881-82 (7th Cir. 2002)(majority op.); <u>id.</u> at 882-84 ("[HUD] issued a broadside and hoped that courts would kowtow[,]" <u>id.</u> at 882.)(Easterbrook, J., concurring).

AO 72A
(Rev. 8/82)

> question at issue. . . . And it discussed at length
> why *Chevron* did not require deference in the
> circumstances there present -- a discussion that
> would have been superfluous had the presence or
> absence of notice-and-comment rulemaking been
> dispositive.

535 U.S. 212, 221-22 (2002)(citations omitted); *see also* Mead,

533 U.S. at 229-234.

One consideration that supports *Chevron* deference is the

fact that HUD's position regarding mark-ups has a longstanding

pedigree. Barnhart, 535 U.S. at 222. In 1976, HUD first

codified its RESPA regulation, wherein it prohibited charging

a fee for "no or nominal services." Kruse v. Wells Fargo Home

Mortgage, Inc., 383 F.3d 49, 60-61 (2d Cir. 2004); Statement

of Policy 2001-1, 66 Fed. Reg. at 53,053. This general

principle supports HUD's 2001 finding that "reviewing" the work

of another settlement service provider is either not a service,

or is a nominal one, for which no fee may be charged under the

law. 66 Fed. Reg. at 53,059 n.7. Additionally, HUD regarded

the statement of policy as being generally applicable, which

supports granting it deference. Mead, 533 U.S. at 233.

HUD's expertise regarding the home mortgage lending

industry bolsters the conclusion that the statement of policy

is entitled to deference. Finally, the Court notes that the

Eleventh Circuit has determined that the policy statement is

AO 72A
(Rev. 8/82)

entitled to deference, albeit in a different context. Heimmermann v. First Union Mortgage Corp., 305 F.3d 1257, 1261-63 (11th Cir. 2002)(HUD's interpretation regarding "yield spread premiums" is entitled to deference); see also Kruse, 383 F.3d at 58-61.[10]

In Kruse, the Second Circuit found that averments that a settlement service provider marked up a third party vendor's cost, without performing any additional service, was sufficient to withstand a motion to dismiss. 383 F.3d at 62. Countrywide notes that this decision is part of a circuit split regarding whether liability may attach under § 8(b) when a settlement service provider marks up a third party vendor's fee, without performing any additional service to justify the enhanced fee.

The Fourth, Seventh, and Eighth Circuits have concluded that under the plain language of the statute, no such liability may attach. Haug v. Bank of Am., N.A., 317 F.3d 832, 836 (8th Cir. 2003)(reasoning that two wrongdoers must share an unearned fee to violate this section); Boulware v. Crossland Mortgage Corp., 291 F.3d 261, 265-66 (4th Cir. 2002)(same); Krzalic, 314

---

[10]     For what it is worth, the Court finds that the agency's interpretation of § 8(b) represents the better approach. Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944). "Reviewing" a service that another has performed should not constitute a compensable component of rendering that service.

F.3d at 877-81 (concluding that the plain language of § 2607(b) was sufficient to find that the section required a culpable giver and receiver of an unearned fee for liability to attach).

However, in addition to the Second Circuit, the Third and Eleventh Circuits have reached the opposite conclusion. As Judge Tjoflat explained in <u>Sosa v. Chase Manhattan Mortgage Corp.</u>:

> The district court's conclusion that subsection 8(b) "plainly says that a violation of the statute requires at least two people" is incorrect. In the English language, the word "and" is "used to connect words, phrases, or clauses that have the same grammatical function." American Heritage Dictionary of the English Language 49 (1976). Subsection 8(b) is comprised of a single sentence. The "and" in the sentence connects the two phrases, "no person shall give" and "no person shall accept." Each of the connected phrases provides a separate subject and verb for the sentence. The "and" in subsection 8(b) therefore operates to create two separate prohibitions: First, "no person shall give any portion, split or percentage of any charge . . . ."; and second, "no person shall accept any portion, split or percentage of any charge . . . ." Giving a portion of a charge is prohibited regardless of whether there is a culpable acceptor, and accepting a portion of a charge is prohibited regardless of whether there is a culpable giver.

348 F.3d 979, 982 (11th Cir. 2003); <u>see also</u> <u>Santiago v. GMAC Mortgage Group, Inc.</u>, 417 F.3d 384, 2005 U.S. App. LEXIS 16078, *9-*14 (3d. Cir. 2005)(finding that the text of § 8(b) "clearly allows a cause of action for markups," <u>id</u>. at *14).

22

The Second Circuit, meanwhile, did not feel compelled by the clear wording of the law to adopt either approach. Finding the language ambiguous, <u>Kruse</u> accorded HUD's statement of policy on this point <u>Chevron</u> deference: mark-ups were prohibited under § 8(b). <u>Kruse</u>, 383 F.3d at 58-61; Statement of Policy 2001-1, 66 Fed. Reg. at 53,057-59; <u>see generally</u>, James H. Pannabecker, The RESPA Manual: A Complete Guide To The Real Estate Settlement Procedures Act, Ch. 8.D.

Turning to this circuit's treatment of the law, in <u>Sosa</u>, the lender charged borrowers more for messenger services than it paid to the companies who provided the actual delivery of the documents. The Eleventh Circuit affirmed dismissal of the plaintiffs' complaint, explaining that there was no allegation in the complaint that the lender had performed "no services" to justify its fee. The court added that

> Chase benefitted the borrowers by arranging for third party contractors to perform the deliveries. Under these circumstances, we find it impossible to say that Chase performed no services for which its retention of a portion of the fees at issue was justified.

<u>Sosa</u>, 348 F.3d at 984.

In contrast, Price has averred that Countrywide performed no services to justify its fee. Price alleges that Landsafe performed the entire settlement service which can be fairly

23

labeled the "rendering of credit reports," 12 U.S.C.A. § 2602(3) (2001), and his allegations must be accepted as true on a motion to dismiss.[11]

At oral argument, Countrywide asserted that § 8(b) should not be read to prohibit mark-ups of services provided by a third party vendor. Instead, Countrywide expressed its preference to "corral 8(b) to its fundamental purpose . . . of guarding against fee-splitting." Dkt. No. 41 at 8. The Court must reject this approach as inconsistent with Sosa. 348 F.3d at 982-83. The practice of outsourcing tasks to vendors, and then collecting more for the work from borrowers than is paid to the third parties, without performing a bona fide service justifying the extra expense, is an unearned fee charged in violation § 8(b) of RESPA. Joel Price has stated a claim entitling him to relief.

---

[11]
    Price also argues that the instant case can be distinguished from Sosa on the basis that coordinating the transmittal of the closing documents in Sosa was more onerous than arranging for the credit reports here. 348 F.3d at 984. That is, Price argues that the Sosa lender surpassed the "no or nominal services" threshold, but that Countrywide cannot. Because the Court accepts the allegations in the complaint as true, it need not reach this argument, which would require a factual judgment beyond the Court's competence at this stage of the proceedings.

AO 72A
(Rev. 8/82)

## CONCLUSION

For the reasons explained above, Countrywide's motion is **GRANTED** in part, and **DENIED** in part. Joel Price asserts a claim upon which relief can be granted, but Russell Price is **DISMISSED** from the case as a named Plaintiff based on improper venue for his claim. <u>See</u> Dkt. No. 15.

**SO ORDERED**, this ____27____ day of September, 2005.


_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)